UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BLACK JAGUAR, WHITE
TIGER, FOUNDATION,
and EDUARDO SERIO,
     Plaintiffs,


     v.                                          CIVIL ACTION NO.
                                                 18-10987-MLW

ANDREA TIFFANY and
DOES 1-20,
     Defendants.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND TO**
**COMPEL ANDREA TIFFANY TO SIGN RETRACTION LETTER**
**(DOCKET ENTRY # 35)**

**August 1, 2019**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion to enforce a

settlement agreement and to compel defendant Andrea Tiffany

("defendant") to sign a retraction letter filed by plaintiff

Black Jaguar, White Tiger, Foundation ("BJWT") and plaintiff

Eduardo Serio (collectively "plaintiffs").[1]  (Docket Entry # 35).

Defendant opposes the motion.  (Docket Entry # 44).  After

listening to oral argument, this court took the motion (Docket

Entry # 35) under advisement.

BACKGROUND

     Plaintiffs filed this action in May 2018 alleging that

---

     [1]  Although the punctuation of BJWT is taken from the
caption of the complaint, the punctuation of BJWT varies in the
complaint.

defendant and unidentified individuals published numerous false and malicious statements of fact about plaintiffs on various social media platforms.  Based on diversity jurisdiction, they assert state law claims for defamation and tortious interference with actual and prospective business relationships.  (Docket Entry # 1).

At a February 6, 2019 status conference, the issue of a possibility of settlement arose.  After a recess to allow defendant to speak to her counsel, the parties returned to the courtroom and plaintiffs' counsel suggested reading terms of a settlement reached by the parties into the record.[2]  Immediately before plaintiffs' counsel read the terms into the record, defendant asked if she had to agree to the settlement "right now," to which this court responded that plaintiffs' counsel is

---

[2]  Two days prior to the hearing, this court allowed defendant's counsel motion to withdraw as counsel.  The December 2018 motion explained he "was hired to attempt to settle this matter quickly" and, "[n]ow that settlement discussions have ended without a resolution, Defendant has decided to represent herself in this matter."  (Docket Entry # 20).  Also two days prior to the hearing, defendant's counsel filed a motion to make a limited appearance to file objections to a pending motion to compel.  (Docket Entry # 27).  This court allowed the motion prior to the hearing prior but noted at the hearing that plaintiffs' counsel did not have an opportunity to object to the limited appearance.  (Docket Entry # 48, pp. 2-3).  Defendant's counsel described his status at the hearing as being to argue the pending motion to compel and to try and facilitate settlement negotiations "for the Court and for the parties."  (Docket Entry # 48, p. 4).  Later during the hearing, this court allowed defendant's counsel "limited appearance since we seem to be on track at the moment," i.e., with a settlement.  (Docket Entry # 48, p. 18).

2

"going to dictate the terms.  Then they will be reduced to writing . . . [a]nd then you will have the opportunity to review it with your counsel and sign."  (Docket Entry # 48, p. 14). Plaintiffs' counsel then proceeded to read certain terms of the purported settlement into the record, including that defendant "will execute a correction/retraction letter which my clients will be free to use to attempt to restore their reputation to the extent necessary."  (Docket Entry # 48, p. 15).  After reading various terms into the record, defendant stated that she understood the terms.  (Docket Entry # 48, p. 19).  When asked if she understood that "this will be the substance of the agreement," the following exchange took place:

> The Defendant:  Yes.  I mean, there's a little detail that I think will get worked out later, but I understand.
>
> The Court:  And what is that?
>
> The Defendant:  The letter and stuff like this.  I don't really understand what they're wanting with this.
>
> [Defendant's Counsel]:  The details of the settlement will be worked out in a written Settlement Agreement . . .
>
> The Court:  So do you understand all of the terms that have been set forth today?
>
> The Defendant:  Yes.  I would like to see them in writing though.  I'm not good verbally hearing things.  I need to visually see it.

(Docket Entry # 48, pp. 19-20).

On February 28, 2019, this court convened a second status conference during which the dispute regarding the content of the

retraction letter continued.  Plaintiffs' counsel stated his
clients needed the retraction letter to accept a settlement that
had no money thus indicating the materiality of the retraction
letter.  (Docket Entry # 49, p. 19).  At the conclusion of the
conference, this court gave defendant two weeks to write a
retraction letter and set a further hearing to determine if
plaintiffs could "live with that statement."  (Docket Entry # 49,
pp. 27-28).  Plaintiffs' counsel agreed.  (Docket Entry # 49, p.
28).

In a March 14, 2019 email to plaintiffs' counsel,
defendant's counsel attached a letter stating that defendant "has
agreed to sign" the letter (henceforth, "March 14 retraction
letter").  (Docket Entry # 35-4).  Plaintiffs' counsel responded
by email the following day that the March 14 retraction letter
was acceptable except for a typographical error in the spelling
of plaintiff Eduardo Serio's name.  (Docket Entry # 35-5).  In a
reply email, defendant's counsel attached a corrected version of
the March 14 retraction letter, stated he would ask defendant to
sign the final settlement agreement, and thanked plaintiffs'
counsel for his "help in resolving this matter."  (Docket Entry #
35-6).  Plaintiffs' counsel forwarded an executed version of the
settlement agreement to defendant's counsel on March 18.  Like
other versions, it contains the following language regarding the
retraction letter:

5. Retraction Letter

Tiffany shall execute the letter attached hereto as
Exhibit B.  Tiffany agrees and understands that the BJWT
Parties may publish the letter in their sole discretion to
any third party and that the publication of the letter shall
not constitute a violation of this Agreement.  Tiffany
further agrees that she will make no public comment about
the letter once it is signed.  For purposes of this
Paragraph, "no public comment" shall restrict Tiffany from
making statements on social media, regardless of whether the
statement is published on a non-public social media account.
She will not claim, suggest or imply that she was coerced or
pressured into signing the letter and/or that her signature
on the letter is inauthentic.

(Docket Entry # 35-7, ¶ 5) ("paragraph five") (bolding omitted).

Thereafter, defendant refused to sign the settlement

agreement.  At the further hearing on March 21, 2019, defendant

stated she "actually never agreed to settlement.  I said I

understood the terms you guys want me to sign on."  (Docket Entry

# 38, p. 5).  When this court advised her that she had the

benefit of counsel to explain the terms of the settlement and

that this court repeatedly asked if she understood those terms,

defendant replied that "[u]nderstanding is *different* from

agreeing, I guess.  I don't know what else to say."  (Docket

Entry # 38, p. 6) (emphasis added).  Defendant then provided a

different retraction letter and signed the settlement agreement

(which included paragraph five) with this retraction letter,

subject to plaintiffs finding this new retraction letter

acceptable.  (Docket Entry # 38, pp. 9-12).  In the event

plaintiffs did not accept the new retraction letter, this court

advised defendant she would need to file an opposition to the motion to enforce the settlement.  (Docket Entry # 38, pp. 12-13).

It is apparent that the new retraction letter was not acceptable to plaintiffs because defendant filed an opposition to the motion to enforce.  (Docket Entry # 44).  Defendant states in the opposition that "[f]eeling my life is in danger has put undue pressure on me to agree to a settlement."  (Docket Entry # 44, p. 1).  Defendant submits her attorney did not instruct her to read the settlement, "only to sign it."  (Docket Entry # 44, p. 1).  She further states she did not give her "informed consent" for the settlement and asserts the settlement is "void due to the lack of contract," in other words, that the parties never came to an agreement.  (Docket Entry # 44, pp. 1, 8).  She also expressed a belief that "no documents would be made public."  (Docket Entry # 44, p. 1).

<u>DISCUSSION</u>

This court "may summarily enforce" a settlement "agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement."  <u>Fid. and Guar. Ins. Co. v. Star Equip. Corp.</u>, 541 F.3d 1, 5 (1st Cir. 2008).  Conversely stated, "'"a trial court may *not* summarily enforce a settlement agreement"'" if material facts are in dispute as to the validity or terms of the agreement."  <u>Bandera v. City</u>

6

of Quincy, 344 F.3d 47, 52 (1st Cir. 2003) (quoting Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999)) (emphasis added).  In the event "'a genuinely disputed question of material fact'" does exist as to validity or the material terms of a purported settlement, an evidentiary hearing is warranted to resolve the contested factual issues.  Id. at 50, 52 (citation omitted).

Where, as here, diversity jurisdiction provides the basis to adjudicate the claims (all of which arise under state law), Massachusetts law governs the validity and the terms of the purported settlement agreement.  See In re Volkswagen & Audi Warranty Extension Litig., 692 F.3d 4, 15 (1st Cir. 2012) ("As a general matter, 'interpreting settlement agreements and their scope is a matter of state contract law.'") (internal brackets and citations omitted).  In fact, the purported settlement agreement includes a provision that Massachusetts law applies. (Docket Entry # 35-8, p. 10).

In Massachusetts, "[a]n enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." Targus Grp. Int'l, Inc. v. Sherman, 922 N.E.2d 841, 848 (Mass. App. Ct. 2010); accord Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000).  For example, when parties to settlement negotiations could not agree upon the

scope a release, which was the main value of the proposed
settlement for one of the parties, the court in <u>United States ex</u>
<u>rel. Allen v. Alere Home Monitoring, Inc.</u>, 355 F. Supp. 3d 18, 25
(D. Mass. 2019), concluded there was no agreement upon the
material terms.  As explained in <u>Allen</u>:

> the record demonstrates that the three parties to the
> settlement negotiations had not and could not mutually agree
> to the scope of the release.  Because the release was a
> material term, there was no enforceable agreement.  This was
> simply not a circumstance where the parties had "agreed upon
> all material terms," such that the purpose of a final
> executed document was "to serve as a polished memorandum of
> an already binding contract." <u>Goren v. Royal Invs. Inc.</u>, 25
> Mass.App.Ct. 137, 516 N.E.2d 173, 175 (1987).  As a result,
> Relator's reliance on <u>Fecteau Benefits Group., Inc. v. Knox</u>,
> 72 Mass.App.Ct. 204, 890 N.E.2d 138, 145-46 (2008), is
> inapt.

<u>Id.</u>

Here too, the retraction letter is a material term of the
purported settlement and a material issue exists regarding
whether defendant understood and agreed the March 14 retraction
letter could be made public.  Even recognizing that defendant's
counsel thanked plaintiffs' counsel for his "help in resolving
this matter" (Docket Entry # 35-7), it nevertheless remains a
material issue of fact as to whether defendant had a present
intent to be bound by paragraph five of the proposed settlement
agreement at and around the time her counsel sent the email
stating that defendant agreed to sign the March 14 retraction
letter.  (Docket Entry # 35-4).  Additional facts are also needed
to address the asserted undue pressure or implication of

coercion.  See Fid. and Guar. Ins. Co. v. Star Equip. Corp., 541
F.3d at 6 (upholding enforcement of settlement while noting that
opposing parties did not claim "they were coerced into signing
the agreement or that their counsel settled their claim without
authority"); accord Bandera v. City of Quincy, 344 F.3d at 52
(noting "one might need more facts, as well as briefing" to
address issues surrounding coercion).  Moreover, in lieu of
instructing defendant to read the settlement, defendant's
attorney told her to sign it, according to defendant.  (Docket
Entry # 44).  Although she expressed an understanding of the
terms read into the record, it is a material issue whether she
understood and agreed that her signature was not required to make
the agreement final at and around the time her counsel emailed
the March 14 retraction letter.  In light of these material
issues of fact, an evidentiary hearing is needed.  Because of
defendant's pro se status, this court will convene a status
conference to address the procedure for such a hearing and any
alternative, such as addressing the motion to compel and moving
forward with discovery in an expeditious manner.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court will
conduct a status conference on August 19, 2019 at 12:15 p.m.

        /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

9