```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

BLACK JAGUAR, WHITE TIGER,      )
FOUNDATION and EDUARDO SERIO,   )
     Plaintiff,                 )
                                )
                                )
         v.                     )    C.A. No. 1:18-cv-10987
                                )
ANDERA TIFFANY and DOES 1-20,   )
     Defendants.                )
                                )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                          November 30, 2020

On December 3, 2019, the Magistrate Judge issued a Report and Recommendation concerning plaintiffs' Black Jaguar, White Tiger, Foundation ("BJWT") and Eduardo Serio's Motion to Enforce Settlement (Dkt. No. 35) (the "Motion"). The Magistrate Judge recommends allowing the Motion and ordering defendant Andrea Tiffany to sign a settlement agreement. The matters as to which plaintiff objected have been reviewed de novo. See 28 U.S.C. §636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b)(3); Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 310 (1st Cir. 2019). As explained in this Memorandum, the court is denying plaintiff's objections. The court finds that the Report and Recommendation is thorough, thoughtful, and persuasive. Accordingly, the court is adopting in full the Report and Recommendation.

I.  FACTS

The court adopts the relevant facts recited in the Report and Recommendation, as supplemented by the record. <u>See</u> Rep. & Rec. at 3-19. Some of the facts in the Report and Recommendation were found by the Magistrate Judge at a September 23, 2019 evidentiary hearing on the Motion at which testimony from counsel and Tiffany was taken. The essential facts are summarized as follows.

Plaintiffs filed this action on May 16, 2018, alleging that Tiffany and unidentified individuals published numerous "false and malicious statements of fact" about plaintiffs on "various social media platforms." Dkt. No. 1 (Complaint). Tiffany's alleged defamatory statements began after she donated two serval cats to BJWT, which operates an animal sanctuary in Mexico, because she could no longer care for them in her apartment. When Tiffany later sought the return of her cats, BJWT allegedly told her it would not return them unless she paid BJWT's medical and transportation costs. Tiffany refused and allegedly began making defamatory statements about plaintiffs. <u>Id.</u> at ¶¶1, 2.

Tiffany filed an Answer on October 2, 2018, in which she asserts counterclaims for breach of contract and defamation. <u>See</u> Dkt. No. 13. Among other things, Tiffany seeks an award of damages and an injunction requiring plaintiffs to return her cats.

The parties first raised the issue of settlement at a February 6, 2019 status conference before the Magistrate Judge. At this

2

conference, the parties read the terms of a settlement agreement into the record. See Rep. & Rec. at 4-5. In essence, the agreement provided for the dismissal of all of plaintiffs' claims and Tiffany's counterclaims with prejudice with no exchange of money. See Dkt. No. 48 (Feb. 6, 2019 Tr.) at 14-16. It also included a term requiring that Tiffany execute a letter retracting her allegedly defamatory statements (the "retraction letter"), which plaintiffs would be able to use to restore their reputation. Although the essential terms were read at the conference, the Magistrate Judge informed Tiffany that she would have an opportunity to review the agreement with her counsel once it had been reduced to writing before signing it. See id. at 14.

Over the following weeks, counsel exchanged written drafts of a settlement agreement by email, and on February 20, 2019 reached agreement on a draft which was largely in accordance with the terms read in court on February 6, 2019 (the "February 20 Agreement"). See Dkt. No. 56, Exs. 3, 4; Rep. & Rec. at 6-8. Notably, this draft states that plaintiffs will be "free to use" the retraction letter "to restore their reputation", and that Tiffany will make no public comment, including statements on social media, about the retraction letter. See Dkt. No. 56, Ex. 4. Although plaintiffs had drafted and shared a proposed retraction letter, the parties had not yet reached agreement on the contents of the retraction letter.

3

Tiffany's counsel, David Murphy, forwarded this agreement to Tiffany. See Dkt. No. 56, Ex. 4. However, the next day, Tiffany informed Murphy that she would not agree to the provision allowing plaintiffs to publish the retraction letter. See Rep. & Rec. at 9. Plaintiffs' counsel refused to agree to such a change. Murphy informed her that he could no longer represent her if she was reneging on the agreement described in court on February 6, 2019.

The Magistrate Judge held a second status conference on February 28, 2019, at which Tiffany appeared pro se. See Rep. & Rec. at 9-11. After a lengthy discussion, Tiffany indicated that she might be willing to sign a retraction letter which plaintiffs could publish if she was able to write the letter herself. See Dkt. No. 49 (Feb. 28, 2019 Tr.) at 27-28. Accordingly, the Magistrate Judge instructed Tiffany to attempt to draft a retraction letter that was acceptable to plaintiffs, and set a date for a further hearing on settlement. At the request of the Magistrate Judge, Murphy later agreed to continue to represent Tiffany pro bono for the limited purpose of assisting with drafting the retraction letter and settlement.

Murphy went through several drafts of the retraction letter with Tiffany until it became satisfactory to her in mid-March, 2019. See Rep. & Rec. at 11. In an email sent to Tiffany on March 14, 2019 at 3:38 p.m., which attached this version of the retraction letter, Murphy stated:

4

> "Andrea, you did a really good job with this letter. I made a few minor edits, but I tried to keep almost all of what you wrote. I am hopeful that this will enable us to resolve this matter. Do I have your permission to forward the attached version of your Statement to [plaintiffs' counsel] for settlement?"

Docket No. 56, Ex. 7. Tiffany responded "Yes" one minute later. Id. At 5:54 p.m., Murphy sent another email to Tiffany stating: "Just to confirm, I can send this letter to Attorney Rich?" Docket No. 56, Ex. 8. Tiffany responded "Yes, please do" three minutes later. Id. Murphy then emailed an unsigned copy of the retraction letter to plaintiffs' counsel, stating: "Please see the attached letter that [Tiffany] has agreed to sign. I hope that this will enable us to resolve this matter quickly." Docket No. 56, Ex. 9.[1] The next day, March 15, 2019, at 3:26 p.m., plaintiffs' counsel responded that the retraction letter was acceptable and that his clients would sign the settlement agreement. See Dkt. No. 56, Ex. 10. On March 18, 2019, plaintiffs' counsel emailed Murphy an executed copy of the settlement agreement for Tiffany's signature. Docket No. 56, Ex. 12.

At some point after plaintiffs' counsel sent the executed settlement agreement, Tiffany indicated to her counsel that she did not want to settle the case and wanted to revise the retraction letter. See Dkt. No. 56, Exs. 13, 14. Upon learning that Tiffany

---

[1] Defense counsel testified that defendant eventually signed both the letter and the settlement agreement, and stated them same in a March 18, 2019 email to defendant. See Rep. & Rec. at 12; see also Dkt. Nos. 55, 56-14.

5

was refusing to sign the settlement agreement, plaintiffs on March 20, 2019 filed the instant Motion to Enforce Settlement seeking to compel Tiffany to sign the settlement agreement and be bound by its terms. See Dkt. No. 35.

At a third status conference before the Magistrate Judge on March 21, 2019, Tiffany claimed that she had never agreed to settlement and would not sign the settlement agreement. See Dkt. No. 38 (March 21, 2019 Tr.) at 5. However, she presented a new revised retraction letter to the court and plaintiffs' counsel which was acceptable to her, and signed the settlement agreement with this retraction letter in court. See id. at 6. Plaintiffs' counsel did not believe this new letter would be acceptable to his client, but agreed to present it. He also reiterated his belief that the parties had already reached an enforceable agreement with the prior retraction letter. See id. at 7-8.

Plaintiffs did not accept the revised retraction letter. See Rep. & Rec. at 16. Tiffany was, therefore, required to respond to the Motion and did so, pro se, on April 18, 2019. See Dkt. No. 44. The Magistrate Judge held a hearing on the Motion on April 22, 2019, and took the matter under advisement. See Dkt. No. 47.

On August 1, 2019, the Magistrate Judge concluded that an evidentiary hearing was required to determine whether an enforceable settlement had been reached. See Dkt. No. 51. In particular, she noted that a hearing would be necessary to resolve

6

the factual issues of whether Tiffany had a present intention to be bound by the provision of the settlement agreement allowing plaintiffs to publish the retraction letter at the time Murphy sent the March 14, 2019 3:34 p.m. email to plaintiffs' counsel, whether she understood her signature was not required for an enforceable agreement to be reached at that time, and whether Tiffany was subject to undue pressure or coercion rendering the agreement unenforceable. See Dkt. No. 51. Tiffany agreed to waive attorney-client privilege as to her communications with counsel relating to the settlement. See Dkt. No. 54.

The Magistrate Judge conducted an evidentiary hearing on September 23, 2019, at which testimony was taken from Tiffany and Murphy. See Dkt. No. 55. Numerous email exchanges between counsel, and between Tiffany and Murphy regarding the settlement were introduced by plaintiffs as exhibits at this hearing. See Dkt. No. 56 (Exhibit List).

II. DISCUSSION

The Magistrate Judge concludes that a binding agreement to settle the case was reached on March 15, 2020 when plaintiffs' counsel indicated by email that plaintiffs accepted Tiffany's offer. See Rep. & Rec. at 25.

In reaching this conclusion, the Magistrate Judge finds that Tiffany made an offer of settlement to plaintiffs when she told her attorney to send the retraction letter to plaintiffs' counsel

7

"for settlement" on March 14, 2019, including the February 20 Agreement and the retraction letter in its form as of March 14, 2019. See Rep. & Rec. at 28. The Magistrate Judge notes that Tiffany had ample time to review the terms of the agreement prior to March 14, 2019. Particularly, Tiffany had reviewed multiple drafts of the agreement with Murphy, and as of the status conference on February 28, 2019 she was aware that the retraction letter she drafted could be used publicly by plaintiffs. Id. at 26-28. The Magistrate Judge also finds that Tiffany had agreed to the retraction letter it in its form as of March 14, 2019, based on emails between Tiffany and Murphy in which they edited the new version of the letter that Tiffany had drafted. Id. at 28.

Further, the Magistrate Judge finds that Murphy's repeated communications to Tiffany informing her that oral agreements are binding when made coupled with his request for authorization to send the retraction letter to plaintiffs' counsel "for settlement" and "to resolve this matter", Dkt. No. 56, Ex. 7 (emphasis added), indicated that sending the letter would constitute an offer of settlement. Id. at 29.[2] Accordingly, the Magistrate Judge concludes that a reasonable person in the position of plaintiffs would have believed that Tiffany had a willingness to enter into a bargain

---

[2] The Magistrate Judge also concludes that the parties intended that a final, signed agreement was not necessary and rejects Tiffany's assertions of coercion and undue pressure. See Rep. & Rec. at 25, 31. Tiffany does not object to these findings.

8

when she authorized her attorney to send the letter. Id. at 29-30 (citing Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 351 (D. Mass. 2011)).

Tiffany objects to the Magistrate Judge's conclusion that an enforceable agreement to settle the case had been reached on the basis that "she did not have a present intention to be bound by the material terms of the settlement agreement, including the retraction letter." Obj. at 5. Tiffany argues that she "made clear that she had no intent to settle under the terms of the agreement as proposed by the Plaintiff." Id. She notes that at status conferences with the Magistrate Judge on February 10, 2019, February 28, 2019, and March 21, 2019 she indicated that she did not understand the terms of settlement or did not agree to settlement. Id.

Tiffany's objection does not address the Report and Recommendation's core conclusion that Tiffany made an offer to settle this case on March 14, 2019 when she authorized Murphy to email her retraction letter to plaintiffs' counsel "for settlement", see Rep. & Rec. at 27-30, and plaintiffs accepted this offer the next day by responding that the settlement and retraction letter were acceptable, see id. at 30.

As Tiffany's objection does not address this key March 14 and 15, 2019 email exchange, it provides no basis for the court to reject the Magistrate Judge's conclusion that an enforceable

9

agreement was reached on March 15, 2019. The fact that Tiffany later claimed that she did not understand the settlement or did not agree to it on other occasions does not undermine the conclusion that Tiffany manifested an intention to be bound when she caused her attorney to email the retraction letter to plaintiffs' counsel "for settlement" on March 14, 2019.

"Although mutual assent is often misleadingly referred to as a 'meeting of the minds,' the formation of a valid contract under Massachusetts law requires objective, not subjective, intent." Greene v. Ablon, 794 F.3d 133, 147 (1st Cir. 2015) (emphasis added). Accordingly, and as the Magistrate Judge noted, "[a] party's intent is deemed to be what a reasonable man in the position of the other party would conclude his objective manifestations to mean," and may be inferred from the party's conduct. Id. At most, Tiffany's statements at the March 21, 2019 status conference that she did not agree to the settlement may indicate that she subjectively did not intend her attorney's communications on March 14, 2019 to be an offer. From the position of plaintiffs, however, the messages which she authorized her attorney to send would have communicated to a reasonable person that she intended to be bound by the February 20, 2019 agreement, including the new retraction letter, should plaintiffs accept. See Salem Laundry Co. v. New England Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987) ("Courts determine

10

[] mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do.").

Notably, Tiffany does not dispute the Magistrate Judge's factual findings concerning events after the September 23, 2019 evidentiary hearing that underlie the conclusion that Tiffany made an offer to settle the case on March 14, 2019. Particularly, these findings include the facts that Tiffany had ample time to review the February 20 Agreement, understood that retraction letter she finished drafting on March 14, 2019 would be used publicly by plaintiffs, and had been informed by Murphy that an oral agreement is binding when made.

In light of these findings, which are undisputed and, in any event, supported by substantial evidence, the court agrees that Tiffany's conduct on March 14, 2019 "manifest[ed] a willingness" to be bound by all terms of the February 20, 2019 Agreement, including the March 14, 2019 retraction letter. See Bosque, 762 F. Supp. 2d at 351. Tiffany, therefore, made an offer to settle the case on that date, and an enforceable agreement was reached when plaintiffs accepted the following day.

Accordingly, it is hereby ORDERED that:

1.  The attached Report and Recommendation (Dkt. No. 60) is ADOPTED and INCORPORATED pursuant to 28 U.S.C. §636(b)(1)(C).

2.  Plaintiffs' Motion to Enforce Settlement (Dkt. No. 35) is ALLOWED.

11

3.  Plaintiffs shall, by December 15, 2020, provide defendant with a copy of the final settlement agreement with an attached copy of the March 14, 2019 retraction letter. Defendant shall, by December 17, 2020, sign the agreement and retraction letter. Any failure to do so may be deemed a civil and/or criminal contempt. The parties shall file the Stipulation of Dismissal required by the settlement agreement by December 23, 2020.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE